**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN DOE,

                            Plaintiff,

        v.

NYSARC TRUST SERVICE, INC. et al.,

                       Defendants.

No. 1:20-CV-801
(BKS/CFH)

**APPEARANCES:**

John Doe
P.O. Box 1482
New York, New York
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis

Plaintiff pro se ("plaintiff")[1] commenced this action on February 20, 2020, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that he may properly proceed IFP.[2]

---

[1] The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous actions in other courts. See, e.g., Lau v. Am. Eagle Outfitters, No. 17-CV-6055 (GBD/BCM), 2017 WL 6987996, at *1 (S.D.N.Y. Dec. 1, 2017) ("Plaintiff . . . is not a stranger to this [c]ourt. Because of his "extensive history of filing frivolous complaints," both here and in other courts, he has been barred from filing any new cases *in forma pauperis* (IFP) "without first obtaining from the [c]ourt leave to file.") (quoting Lau v. Match.Com, et. al, Case No. 13-CV-2938 (S.D.N.Y. Jan 28, 2014) (Order)), report and recommendation adopted, No. 17-CV-6055 (GBD/BCM), 2018 WL 461102 (S.D.N.Y. Jan. 16, 2018).

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Initial Review

## A. Legal Standard

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that

the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair

notice of the claim being asserted so as to permit the adverse party the opportunity to

file a responsive answer, prepare an adequate defense and determine whether the

doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y.

1999) (internal quotation marks and citations omitted).  Rule 8 also requires the

pleading to include:

> (1) a short and plain statement of the grounds for the court's
> jurisdiction . . .
>
> (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make

clear that each allegation contained in the pleading "must be simple, concise, and

direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single set
> of circumstances.  A later pleading may refer by number to a
> paragraph in an earlier pleading.  If doing so would promote
> clarity, each claim founded on a separate transaction or
> occurrence – and each defense other than a denial – must
> be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189

F.R.D. at 54 (internal quotation marks and citations omitted).  A complaint that fails to

comply with the pleading requirements "presents far too a heavy burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**B. Plaintiff's Amended Complaint**

Plaintiff filed his original complaint on July 16, 2020.  See Dkt. No. 1.  He then filed an amended complaint on August 31, 2020, which supersedes his original complaint.  See Dkt. No. 10 ("Amen. Compl."); see also Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").  Thus, presently pending before the undersigned for review pursuant to 28 U.S.C. § 1915 is plaintiff's amended complaint.

Liberally construed, plaintiff's amended complaint asserts causes of action pursuant to Title III of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"), alleging disability discrimination and failure to provide reasonable accommodations; and New York State law claims for intentional infliction of emotional distress, assault and battery, and respondeat superior liability. See Dkt. Not. 10 (Amen. Compl.) at 12-14.  Plaintiff names as defendants NYSARC Trust Services, Inc. ("NYSARC"), a non-profit business in Albany County; Warren H. Heillbronner, Esq. ("Heillbronner"), the Trustee and Chairman of the Board of NYSARC; Heidi J. Flatt, CPA ("Flatt"), Director and Chief Operating Officer of NYSARC; Nancy E. Cannon, CPA ("Cannon"), Director and Assistant Chief Operating Officer of NYSARC; Nadia Arginteano, Esq. ("Arginteano"), Trust Attorney at NYSARC; Dorothy Zyskowski ("Zyskowski"), Director of Trusts at NYSARC; Alison Wilkinson ("Wilkinson"), plaintiff's former case manager at NYSARC; Candace Johnstone ("Johnstone"), trust manager/administrator at NYSARC; Jaimie Harla ("Harla"), team leader-trust administration[3]; Laura A. Kennedy ("Kennedy"), President of NYSARC; Tina F. Seaburg, Esq. ("Seaburg"), interim Executive Director of NYSARC; John or Jane Doe, II, Vice President of NYSARC; Jamie Doe, assistant trust manager; and Julie Doe.  See Amen. Compl. at 1.

Plaintiff alleges that, on January 5, 2019, he travelled to Albany, New York, for an appointment with Johnstone concerning his pooled supplemental needs trust.  See Amen. Compl. at 4 ¶ 20, 5 ¶ 21.  Plaintiff posits that, at some point after arriving inside

---

[3]  Jamie Harla is not listed as a defendant on CM/ECF, but is listed as a defendant n plaintiff's amended complaint.  See Dkt. No. 10 ("Amen. Compl.") at 1.  The Clerk of the Court is respectfully directed to add Jamie Harla as a defendant in this action.

NYSARC's lobby, Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Harla, Seaburg, and "John Doe or Jane Doe as the Vice President of the NYSARC . . . ejected and removed [p]laintiff against his will from the subject premises." Id. at 5 ¶ 21. He contends that Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Jamie Doe, Seaburg, and "John Doe or Jane Doe as the Vice President of the NYSARC . . . [a]dvised [p]laintiff that his eject [sic] because schizophrenia and mild mental retardation, both of which impairments have lasted several years and significantly impair [sic] one or more of his major life activities[,] including working and self[-]care." Id. at 5-6 ¶ 22. Plaintiff alleges that, "[r]ather than engaged [sic] in a dialogue with [p]laintiff to identify some mutually agreeable or otherwise reasonable accommodation to [p]laintiff[,]" Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Harla, Seaburg, and "John Doe or Jane Doe as the Vice President of the NYSARC "barred [p]laintiff from the premises." Id. at 6 ¶ 24. Moreover, plaintiff contends that, "[o]n information and belief," NYSARC, Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Jamie Doe, Seaburg, and "John Doe or Jane Doe as the Vice President of the NYSARC" "does not treat similarly situated non-disabled person [sic] in the manner in which [p]laintiff was treated." Id. at 7 ¶ 25. Plaintiff argues that, "[a]s a result, [he] was forced to leave the premises, was rendered [sic] in the midst of winter." Id. at ¶ 26.

Plaintiff further alleges that NYSARC, Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Jamie Doe, Seaburg, John Doe or Jane Doe as the Vice President of the NYSARC, "suddenly entered the [l]obby area that [p]laintiff occupied" and that NYSARC, Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Harla, Seaburg, and John or Jane Doe as the Vice President of NYSARC, "using baton-like object [sic], and

the [d]efendants' [s]ecurity guard and also [sic] the [d]efendants too threatened [plaintiff] and without [p]laintiff's consent [sic] by using a number of derogatory and offensive language [sic] . . . calling [him] 'a dumb bastard," and saying, "[y[ou are retarded," and "[y]our are a retarded motherfucker."  Amen. Compl. at 8 ¶ 27, 9 ¶ 28.  Plaintiff also asserts that NYSARC, Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Harla, Seaburg, and John or Jane doe as Vice President of NYSARC "threatened [him] in sum and substance[] by stating[,] 'I will kill [y]ou and whole [sic] motherfuck [sic] family and friends."  Id. at 9 ¶ 29.  Plaintiff also appears to allege that Harla told him that "we do not let your disability kind [sic] in the [NYSARC premises] as a matter of fact."  Id. at 10 ¶ 30 (italics omitted).  Plaintiff alleges that, "[a]s a direct and proximate result of the aforementioned conduct on the part of both [sic] [d]efendants, [p]laintiff suffered great emotional distress, anxiety and depression, and in the alternative, [p]laintiff's [p]re-existing distress, anxiety and depression were thereby greatly exacerbated."  Id. at 11 ¶ 31.

Plaintiff alleges that, "[d]efendants NYSARC . . . , through the action of" Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Jamie Doe, Seaburg, and John or Jane Doe as the Vice President of NYSARC, "discriminated against [him] on the basis of his disabilities."  Amen. Compl. at 12 ¶ 33.  Further, plaintiff contends that, "[d]ue to both [sic] [d]efendants [sic] disparate treatment of [p]laintiff as an individual with an actual and/or perceived disability, and their refusal to reasonably accommodate him[, d]efendants have violated both the anti-discrimination and reasonable accommodation provision of [the ADA and NYSHRL]."  Id. at ¶ 35; see id. at 14 ¶ 40.  Plaintiff also states that "[d]efendants' conduct denied [him] equal access to their facilities because of his

disability" and, as a result, he "suffered inconvenience, embarrassment, and humiliation, inter alia." Id. at 13 ¶ 37; 14 ¶¶ 41, 44.  He posits that defendants' "wrongful behavior [sic] [his] rights under the [ADA] caused [him] psychological suffering." Id. at 12 ¶ 33. Moreover, plaintiff alleges that "NYSARC . . . and Heillbronner . . . are liable under [r]espondeat [s]uperior [c]laims." Id. at 15 ¶ 49.

Plaintiff requests as relief (1) compensatory and punitive damages "under the ADA . . . and the . . . NYSHRL"; (2) declaratory judgement; (3) injunctive relief; and (4) any further relief the "Court deems appropriate, including costs pursuant to 42 U.S.C. § 1988." Amen. Compl. at 16 ¶¶ 48-49, 17.

### C. Analysis of the Amended Complaint[4]

### 1. Requested Relief

As an initial matter, insofar as plaintiff seeks monetary relief for alleged violations of Title III of the ADA, his claims must be dismissed with prejudice because "Title III[] authorizes private actions only for injunctive relief, not monetary damages." Krist v. Kolombos Rest. Inc., 688 F.3d 89, 94 (2d Cir. 2012).  In addition, to the extent plaintiff seeks punitive damages pursuant to the NYSHRL, his claims must likewise be dismissed with prejudice because, except in cases of housing discrimination, "the NYSHRL does not permit [recovery of] punitive damages." Hauff v. State Univ. of New York, 425 F. Supp. 3d 116, 138 (E.D.N.Y. 2019); see N.Y. EXEC. LAW § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, **including, in cases**

---

[4]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**of housing discrimination only, punitive damages**, and such other remedies as may

be appropriate . . . ." (emphasis added)).


### 2.  Intentional Disability Discrimination Claims under Title III of the ADA and the NYSHRL Against NYSARC

"To state a claim under the ADA and the NYSHRL, a plaintiff must allege (1) that

[]he is a qualified individual with a disability; (2) that defendants are a public

accommodation as defined under Title III; and (3) that []he was denied the opportunity

to participate in or benefit from defendants' services, programs or activities, or was

otherwise discriminated against by defendants on the basis of [his] disability."  Oakley v.

Dolan, No. 17-CV-6903 (RJS), 2020 WL 818920, at *15 (S.D.N.Y. Feb. 19, 2020)

(internal quotation marks and citation omitted); see also Rodal v. Anesthesia Grp. of

Onondaga, P.C., 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability

discrimination claims are governed by the same legal standards as federal ADA

claims."); Romanello v. Shiseido Cosmetics Am. Ltd., No. 00-CV-7201 (JGK), 2002 WL

31190169, at *7 (S.D.N.Y. Sept. 30, 2002) ("[T]he same standards used to evaluate

claims under the ADA also apply to cases involving the NY[S]HRL.").

Under the ADA, the term "disability" means "a physical or mental impairment that

substantially limits one or more major life activities of such individual."  42 U.S.C. §

12102.  A physical or mental impairment can be "[a]ny mental or psychological disorder,

such as an intellectual disability [or an] emotional or mental illness[.]"  29 C.F.R. §

1630.2(h)(2).  "[M]ajor life activities include, but are not limited to, caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending speaking, learning, reading, concentrating, thinking, communicating, and

working."  42 U.S.C. § 12102.  "[P]ublic accommodations" are defined under 42 U.S.C.

§ 12181(7)(F), which includes a long list of qualifying private facilities, provided that their

operations "affect commerce," such as an "insurance office, professional office of a

health care provider, hospital, or other service establishment."

Here, plaintiff alleges that he suffers from schizophrenia and mild mental

retardation, which he posits impair his ability to work and care for himself.  See Amen.

Compl. at 5-6 ¶ 22.  Further, he states that NYSARC is a non-profit entity that services,

among other things, pooled supplemental needs trusts and that he is a beneficiary of

such a trust that is serviced by NYSARC.  See id. at 2 ¶ 3, 4 ¶ 20.  Moreover, liberally

construing the amended complaint, plaintiff alleges that employees of NYSARC ejected

him from NYSARC's place of business explicitly because of his disabilities, thereby

depriving him of NYSARC's services.  See id. at 5 ¶ 21.  Accordingly, affording plaintiff's

pro se pleading a liberal construction, the undersigned concludes that plaintiff's

intentional discrimination claims against NYSARC pursuant to Title III of the ADA for

injunctive relief and the NYSHRL for injunctive relief and/or compensatory damages

survive initial review.  However, the undersigned makes no finding as to whether these

claims would survive a properly supported dispositive motion.

### 3.  Disability Discrimination Claims under Title III of the ADA and the NYSHRL Against the Individual Defendants

"[T]he question of whether a person is a proper defendant under the ADA turns

. . . on . . . whether the defendant owns, leases, or operates a place of public

accommodation within the meaning of the ADA."  Coddington v. Adelphi Univ., 45 F.

Supp. 2d 211, 215 (E.D.N.Y. 1999) (emphasis removed).  In assessing whether an

individual is a proper defendant under the ADA, "[c]ourts . . . have focused on the issue of control and whether the named defendant 'operates' a place of public accommodation within the meaning of the ADA." Id. at 216.  "Under Title III, 'to operate' means 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'" Green v. DGG Properties Co., Inc., No. 3:11-CV-01989 (VLB), 2013 WL 395484, at *13 (D. Conn. Jan. 31, 2013) (quoting Celeste v. East Meadow Union Free School Dist., 373 F. App'x 85, 91 (2d Cir. 2010) (summary order) (additional internal quotation marks and citation omitted).  Further, "[t]he term 'operate' has been interpreted as being in a position of authority and having the power and discretion to perform potentially discriminatory acts." Coddington, 45 F. Supp. 2d at 215.  Moreover, courts have explained that "[s]uch discriminatory acts may result in the imposition of liability under the ADA where they are the result of the exercise of the individual's own discretion, and not merely the implementation of institutional policies or the mandates of superiors." Id.

However, courts have held that "naked assertions devoid of further factual enhancement" concerning an individual defendant's level of control over a public accommodation are insufficient for purposes of establishing individual liability under Title III of the ADA or the NYSHRL.  Iqbal, 556 U.S. at 678; see Green, 2013 WL 395484, at *14.  For example, in Green, where "[p]laintiff merely assert[ed] the names of the individual defendants and their respective titles," without more, the court held that, although the individual defendants could "be proper defendants in [the] action if they exercised the requisite control over [the public accommodation], the plaintiff "failed to allege any facts in his complaint that would allow the court to conclude that [the

individual defendants] exercised such control over the functioning of affairs of [the public accommodation]." Id.  Similarly, in Bebry, the court held that the plaintiff failed to sufficiently plead facts to establish individual liability under Title III of the ADA or the NYSHRL where the plaintiff alleged only that the individual defendant was "the lessee and/or operator of the [r]estaurant and the owner of the improvements where the [r]estaurant [wa]s located" and that, although plaintiff established that the individual defendant was "the [c]hairman or CEO of" the entity that ran the restaurant and the tenant of the property where the restaurant was located, the complaint "provide[d] no additional factual allegations."  Bebry v. ALJAC LLC, 954 F. Supp. 2d 173, 178, 179 (E.D.N.Y. 2013).

Here, even affording the amended complaint the most liberal construction possible, plaintiff has not pleaded facts to establish the liability of any of the individual defendants under the ADA or the NYSHRL.  Similar to Bebry and Green, although plaintiff states the names and titles of the individual defendants in making his claims, the amended complaint does not advance any facts from which the undersigned is able to infer that any of the individual defendants "were in such positions of authority, or had such power and discretion" such that they can be said to "operate" NYSARC.  Green, 2013 WL 395484, at *14; see Bebry, 954 F. Supp. 2d at 178, 179.  In addition, despite placing all or most of the individual defendants' names before each of his allegations concerning the purportedly discriminatory comments and threats, plaintiff does not proffer any facts indicating which of these defendants made the alleged threats or remarks complained of.  See Amen. Compl. at 8 ¶ 27, 9 ¶¶ 28-29, 10 ¶ 30.  Moreover, although plaintiff appears to allege that a security guard at NYSARC was responsible

12

for at least some of the purportedly discriminatory conduct, the security guard is not

named as a defendant in this action.  See id. at 8 ¶ 27.  Thus, in light of plaintiff's pro se

status, it is recommended that plaintiff's claims pursuant to Title III of the ADA and the

NYSHRL against the individual defendants be dismissed without prejudice and

opportunity to amend.


### 4.  Failure to Provide Reasonable Accommodations under Title III of the ADA and the NYSHRL Against NYSARC and the Individual Defendants

"Title[] . . . III of the ADA prohibit[s] discrimination against qualified disabled

individuals by requiring that they receive 'reasonable accommodations' that permit them

to have access to and take a meaningful part in public services and public

accommodations."  Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.),

opinion corrected, 511 F.3d 238 (2d Cir. 2004) (citations omitted).  To adequately plead

a claims pursuant to Title III of the ADA and the NYSHRL for failure to provide

reasonable accommodations, a plaintiff must allege facts establishing that the

defendant's "failure to make 'reasonable modifications' to their policies, practices, and

procedures deprived plaintiff of the ability to access the 'goods, services, facilities,

privileges, advantages, or accommodations' available to those lacking [the] plaintiff's

disabilities."  Andersen v. N. Shore Long Island Jewish Healthcare Sys. Zucker Hillside

Hosp., No. 12-CV-1049 (JFB/ETB), 2013 WL 784391, at *9 (E.D.N.Y. Jan. 23, 2013)

(quoting 42 U.S.C. 12182(b)(2)(A)(i)-(ii) (additional citation omitted), report and

recommendation adopted as modified, No. 12-CV-1049 (JFB/ETB), 2013 WL 784344

(E.D.N.Y. Mar. 1, 2013).

Here, plaintiff alleges that, "[r]ather than engaged [sic] in a dialogue with [p]laintiff to identify some mutually agreeable or otherwise reasonable accommodation to [p]laintiff[,]" Heillbronner, Flatt, Zyskowski, Arginteano, Wilkinson, Harla, Seaburg, and "John Doe or Jane Doe as the Vice President of the NYSARC "barred [p]laintiff from the premises." Id. at 6 ¶ 24.  He alleges that defendants took this action solely because of his schizophrenia and mild mental retardation.  See id. at 5-6 ¶ 22.  Plaintiff's allegations in this regard are wholly conclusory and the amended complaint is devoid of factual allegations concerning NYSARC's "policies, practices, [or] procedures." Andersen, 2013 WL 784391, at *9.  Accordingly, it is recommended that plaintiff's claims for disability discrimination based on failure to provide reasonable accommodations be dismissed.  In light of plaintiff's pro se status, it is recommended that these claims be dismissed without prejudice and leave to amend.

### 5. Disability Discrimination based on Disparate Treatment of Similarly Situated Individuals under Title III of the ADA and the NYSHRL Against NYSARC and the Individual Defendants

"A showing of disparate treatment—that is, a showing that the [defendant] treated plaintiff less favorably than a similarly situated [person] outside his protected group—is a recognized method of raising an inference of discrimination." Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).  Here, insofar as plaintiff's amended complaint may be construed as attempting to establish disability discrimination based on disparate treatment by stating that defendants "do[] not treat similarly situated non-disabled person [sic] in the manner in which [p]laintiff was treated," Amen. Compl. at 7 ¶ 25, plaintiff's claim in this regard is wholly conclusory in that he fails to proffer any facts

14

in support thereof.  Consequently, it is recommended that plaintiff's claims for disability

discrimination based on disparate treatment be dismissed.  In light of plaintiff's pro se

status, it is recommended that these claims be dismissed without prejudice and with

opportunity to amend.

### 6. State Law Claims

Liberally construing the amended complaint, plaintiff appears to allege New

York State law claims of intentional infliction of emotional distress ("IIED"), assault and

battery, and respondeat superior liability.  See Amen. Compl. at 8 ¶ 27, 9 ¶ 28, 11 ¶ 31,

15 ¶¶ 45-47.  Plaintiff's New York State law claims for IIED and assault and battery are

barred by the one-year statute of limitations that governs those claims.  See C.P.L.R.

215(3) ("The following actions shall be commenced within one year: an action to recover

damages for assault [and] battery."); see also Forbes v. Merrill Lynch, Fenner & Smith,

Inc., 957 F. Supp. 450, 455 (S.D.N.Y. 1997) ("It is well established under New York law

that a claim of intentional infliction of emotional distress has a one-year statute of

limitations." (internal quotation marks and citations omitted).  Thus, because plaintiff's

claims accrued on January 5, 2019—the date of the alleged incidents at NYSARC—and

plaintiff did not file this action until July 7, 2020, see Dkt. No. 1, the statute of limitations

for his state law tort claims has expired.  See C.P.L.R. 215(3); Forbes, 957 F. Supp. at

455.  Consequently, as plaintiff's state law tort claims must be dismissed as time-

barred, "it necessarily follows that any cause of action against [NYSARC or

Heillbronner] based on the theory of respondeat superior and premised upon the

alleged [state law torts] must also be dismissed" as time-barred.  Magriz v. St. Barnabas

Hosp., 43 A.D.3d 331, 333, 841 N.Y.S.2d 245, 246 (2007).  Accordingly, it is

recommended that plaintiff's state law claims be dismissed with prejudice and without

opportunity to amend.


**D. Request to be Proceed Under a Pseudonym**

Also presently pending before the undersigned is plaintiff's request to be listed

as an anonymous plaintiff and to proceed using a pseudonym.  See Dkt. No. 9.

Plaintiff's asserted reasons for seeking to proceed anonymously are that (1) there "was

a threat to [his] life by [d]efendants' employment [sic], and during that person's work

with the [d]efendant"; and (2) certain documents he has submitted to the Court contain

personal information, such as his social security number.  Id. at 1.  Plaintiff argues that

he has "a right to . . . privacy by law in the event of identity theft."  Id.

Courts consider the following non-exhaustive list of factors in determining

whether to allow a plaintiff to remain anonymous and proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly
> sensitive and of a personal nature; (2) whether identification
> poses a risk of retaliatory physical or mental harm to the
> party seeking to proceed anonymously or even more
> critically, to innocent non-parties; (3) whether identification
> presents other harms and the likely severity of those harms;
> (4) whether the plaintiff is particularly vulnerable to the
> possible harms of disclosure; (5) whether the suit is
> challenging the actions of the government or that of private
> parties; (6) whether the defendant is prejudiced by allowing
> the plaintiff to press his claims anonymously, whether the
> nature of that prejudice (if any) differs at any particular stage
> of the litigation, and whether any prejudice can be mitigated
> by the district court; (7) whether the plaintiff's identity has
> thus far been kept confidential; (8) whether the public's
> interest in the litigation is furthered by requiring the plaintiff to
> disclose his identity; (9) whether, because of the purely legal
> nature of the issues presented or otherwise, there is an

atypically weak public interest in knowing the litigants'
identities; and (10) whether there are any alternative
mechanisms for protecting the confidentiality of the plaintiff.

Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) (internal

quotation marks, citations, brackets, and ellipses omitted).

In this case, plaintiff's request neither discusses these relevant factors nor

provides any basis for extending the rare privilege of proceeding in the action using a

pseudonym.  Although he has provided documents containing personal identifying

information, he has not identified any real or specific risk of harm, including theft of his

identity, if his request to proceed anonymously is denied.  Indeed, it is rare that the

personal identifying information of parties in litigation is not contained in their filings in

this Court.  Moreover, having considered plaintiff's amended complaint, the undersigned

concludes that plaintiff's privacy interests do not outweigh the public's interest in full

disclosure of these judicial proceedings.  Plaintiff has voluntarily opted to commence

this action and air his grievances in a quintessentially public forum.  Therefore, in the

interest of facilitating public scrutiny of judicial proceedings, and in the interest of basic

fairness, the undersigned finds that plaintiff should be required to proceed in this action

using his true identity. See Doe v. Frank, 951 F.2d 320, 323 (11th Cir.1992) ("The

ultimate test for permitting a plaintiff to proceed anonymously is whether [he] has a

substantial privacy right which outweighs the customary and constitutionally-embedded

presumption of openness in judicial proceedings.  It is the exceptional case in which a

plaintiff may proceed under a fictitious name." (quotation marks, footnote, citation

omitted)); Doe v. Shakur, 164 F.R.D. 359, 361 (S.D.N.Y.1996) ("Fairness requires that

[the plaintiff] be prepared to stand behind her charges publicly.").

17

**E. Motion to Register and Consent for Electronic Service of Orders and Notices Issued by the Court in Civil Cases**

Plaintiff has also filed a form from the United States District Court for the Eastern District of New York titled "Pro Se Registration and Consent for Electronic Service of Orders and Notices Issued by the Court in Civil Cases."  Dkt. No. 8. Although similar in some respects, the Eastern District's form is significantly different than the form used in this Court.  Should plaintiff wish to obtain ECF access, he is directed to properly complete and submit this Court's Pro Se Motion to Obtain ECF Login.[5]  Accordingly, it is recommended that plaintiff's motion to obtain ECF access is denied with opportunity to submit of the appropriate form with this Court.  Plaintiff is advised that, if he chooses to file this Court's form and request to obtain ECF access, that he must legibly provide all requested information.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED**, that plaintiff's claims for monetary damages pursuant to Title III of the ADA and claims for punitive damages pursuant to the NYSHRL be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

---

[5]  The Northern District pro se motion to obtain ECF login and password form can be found at the following url:
https://www.nynd.uscourts.gov/sites/nynd/files/forms/Pro_Se_Motion_Obtain_ECF_Login.pdf.

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**[6]: ADA Title III and NYSHRL intentional disability discrimination claims against the individual defendants; and ADA Title III and NYSHRL claims based on failure to provide reasonable accommodations and disparate treatment against all defendants; and it is further

**RECOMMENDED**, that the following of plaintiff's claims proceed: ADA Title III and NYSHRL claims for intentional discrimination against NYSARC but only insofar as plaintiff seeks injunctive relief pursuant to Title III of the ADA and injunctive relief and/or compensatory damages pursuant to the NYSHRL; and it is further

**RECOMMENDED**, that plaintiff's state law claims be **DISMISSED WITH PREJUDICE AND WITHOUT OPPORTUNITY TO AMEND** as time-barred; and it is further

**ORDERED**, that plaintiff's motion to proceed as an anonymous plaintiff is **DENIED WITHOUT OPPORTUNITY TO RENEW**, and it is further

**ORDERED**, that plaintiff's request to obtain ECF access is **DENIED** with opportunity to file the appropriate form with the Court within thirty (30) days from the date of this Report-Recommendation & Order; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint,

---

[6] Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014(1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action.

and if plaintiff does not file an amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[7]

Dated: September 28, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).